IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ROSA CAMPER, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | Civil No. 3:19-CV-00676-E |
| v. | § | |
| | § | |
| SELECT PORTFOLIO | § | |
| SERVICING, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 9). Upon review of the complaint, motion, Plaintiff's response, and Defendants' reply, the motion is granted for reasons that follow.

**Background**

Plaintiff Rosa Camper initiated this lawsuit in state court against Defendants Select Portfolio Servicing, Inc., Bank of America, N.A., and Deutsche Bank National Trust Company, as trustee, in trust for registered holders of Soundview Home Loan Trust 2007-WMC1, Asset-Backed Certificates 2007-WMCI. Defendants removed the case to federal court. The suit involves Plaintiff's home mortgage. Plaintiff asserts six claims: two for breach of contract, breach of implied duty of good faith and fair dealing, promissory estoppel, fraud-negligent misrepresentation, and violations of

1

the Texas Deceptive Trade Practices Act. Defendants have moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Such a motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Id.* Although the Court must accept the factual allegations in the pleadings as true, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court takes well-pleaded factual allegations in the complaint as true, but does not credit conclusory allegations. *Chhim v. Univ. of Tex. at Austin*, 336 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

The factual background in Plaintiff's pleading is 29 paragraphs and is difficult to understand. Plaintiff alleges that in 2006, she obtained a 30-year mortgage loan on property in Dallas County from WMC Mortgage

Corporation. In 2013, "a Substitution of Trustee was filed," and on March 7, 2014, "a Substitute Trustee for the Deed of Trust was signed." On March 11, 2014, the property was foreclosed on. Plaintiff alleges that the servicing of the loan was transferred to Defendant Select Portfolio Servicing (SPS) "while a loan modification was under consideration" at Defendant Bank of America (BOA). Plaintiff asserts that in March 2015, she hired an independent consulting company to review her loan documents. According to Plaintiff, "The review revealed significant discrepancies between the promises made by SPS Defendant and the final loan." Plaintiff alleges WMC sold the note for money it did not have "to a party WMC . . . knew would be the first in a long securitization chain, whereupon the Note, instead of being evidence of a debt, became the loan itself, and was intended to be, and was, converted into, a security, to be regulated by the Securities Exchange Commission, none of which was disclosed." Plaintiff alleges this transaction altered the contract. Then the "monetized Note was eventually sold into a 'Trust', apparently managed by a 'Trustee', both presently making beneficial claims to the Note and both bound by a Pooling and Servicing Agreement ('PSA')." Plaintiff alleges that had she known WMC would engage in a conspiracy to monetize the Note, she would likely have not signed it.

The complaint alleges that SPS failed to do a number of things, including: 1) notify Plaintiff that she may receive a copy of her payment history and other documents; 2) reply to Plaintiff's written request for a copy

of her payment history and other documents; 3) send Plaintiff a detailed "plain language acclaim summary" at least 14 days prior to referral to foreclosure attorney or trustee; 4) give Plaintiff an opportunity to reapply for a loan modification; and 5) notify Plaintiff of the new foreclosure sale date after the foreclosure schedule was delayed.

The complaint further alleges that the Deed of Trust and Promissory Note have "taken two distinctly different paths." The Deed of Trust was never transferred, while the Promissory Note was combined with other loans and mortgages, sold, and transferred. Plaintiff alleges that on March 21, 2007, the Soundview Home Loan Trust 2007-WMC1 closed, and any assignments, transfers, or conveyances of the Deed of Trust or Promissory Note after that date are void. Plaintiff asserts her loan was transferred to another servicer while a loan modification was pending.

## Breach of Contract

Plaintiff's first claim is for breach of contract. Her complaint asserts that she and Defendants entered into an agreement for a loan modification to become permanent on a date determined by Defendants. Because Defendants took Troubled Asset Relief Program (TARP) money, which was intended to encourage lenders to restructure loans and avoid foreclosure, they were required to follow certain Treasury Department guidelines. She alleges that Defendants had a contract with the federal government and its agencies under the Home Affordable Mortgage Program (HAMP), a loan modification

4

program. Defendants breached that contract (by breaching their agreement with Plaintiff on a loan modification), and Plaintiff is a third-party beneficiary "to the HARP contract." The complaint does not identify what HARP stands for and uses HAMP and HARP interchangeably. Plaintiff contends she has been financially harmed by Defendants' breach of their HARP contract with the United States.

There is a strong presumption against third-party beneficiary arrangements in Texas. *James v. Wells Fargo Bank, N.A.*, No. 5:12-CV-042-C, 2012 WL 12878197, at *5 (N.D. Tex. July 18, 2012); *see S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). A party is presumed to contract only for its own benefit, and any intent to benefit a third party must be clearly apparent and will not be presumed. *James*, 2012 WL 12878197, at *5. Therefore, the contracting parties' intent to confer a benefit to a third party must be clearly and fully spelled out, or enforcement by the third party must be denied. *Id.*

Further, courts in this circuit have repeatedly held that borrowers are not third-party beneficiaries of a lending institution's HAMP agreements. *Id.*; *see Cade v. BAC Home Loans Servicing*, No. H-10-4224, 2011 U.S. Dist. LEXIS 65045, at *12-13 (S.D. Tex. June 20, 2011); *Backal v. Wells Fargo*, No. 4:11-CV-563, 2011 U.S. Dist. LEXIS 139144, at *7 (E.D. Tex. Nov. 3, 2011). While lending institutions may have contractual obligations arising under HAMP

and related programs, borrowers do not have standing to challenge compliance with these agreements. *James*, 2012 WL 12878197, at *5.

Plaintiff's allegation that she is a third-party beneficiary is conclusory. Without further explanation, she merely alleges that she is "a third-party beneficiary to the HARP contract with the United States Government." Plaintiff has made no attempt to explain how it is clearly apparent that the contracting parties' intended to benefit her. Nor does her complaint present facts to distinguish her case from those indicating she does not have standing to complain about Defendants' compliance with HARP or HAMP agreements.

Plaintiff's fifth claim is also for breach of contract, specifically the Pooling and Servicing Agreement. She alleges Defendants breached the PSA by assigning the Promissory Note after the closing of the Soundview Home Loan Trust. Plaintiff asserts she was a third-party beneficiary to the PSA. She seeks an injunction setting aside the foreclosure of her property and monetary damages.

Defendants move to dismiss this claim on grounds that Plaintiff lacks standing challenge the assignment of the mortgage because Plaintiff is not a party to the PSA. Defendants assert Plaintiff's allegations that she is a third-party beneficiary to the PSA are conclusory. The Court agrees. *See Metcalf v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012). Without any supporting facts, Plaintiff merely

alleges she is a third-party beneficiary to the PSA. Plaintiff has failed to plead a plausible breach of contract claim.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff also asserts a claim for breach of the implied covenant of good faith and fair dealing against Defendants SPS and BOA. Plaintiff alleges that the HARP contract with the United States Government included an implied covenant of good faith and fair dealing. Plaintiff asserts Defendants' breach of the HARP contract was also a breach of this covenant, which adversely affected Plaintiff as a third-party beneficiary.

For the same reasons Plaintiff does not have a plausible claim for breach of the HARP contract, she does not have a plausible claim for breach of the covenant of good faith and fair dealing. Her claim is based upon her status as a third-party beneficiary to the contract, and she has not supported that status with adequate facts.

In addition, even if Plaintiff can establish that she was a third-party beneficiary, Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). In the absence of a formal fiduciary relationship, the duty may exist if the parties are in a special or confidential relationship. *Id.* The relationship must exist before and apart from the contract or agreement that forms the basis of the controversy. *Id.* Texas courts have refused to impose a tort duty of good faith and fair dealing

7

on a mortgagor/mortgagee relationship. *Id.* at 781–82. Plaintiff has failed to plead facts establishing that such a relationship exists in this case. She has failed to plead a plausible claim for breach of the covenant of good faith and fair dealing.

## Promissory Estoppel

Plaintiff also asserts a claim for promissory estoppel against SPS and BOA. She alleges Defendants "made a clear an unambiguous promise" to her for the purpose of modifying the terms of her loan. "Such representations were made with Plaintiff's full reliance to Defendants that this would prevent foreclosure of her home." Plaintiff relied upon the promise that her loan modification application was being reviewed on the merits. "[N]o such good faith review was provided."

A cause of action for promissory estoppel requires: (1) a promise by the defendant; (2) foreseeable and actual reliance on the promise by the plaintiff to her detriment; and (3) that enforcement of the promise be necessary to avoid an injustice. *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 248 (5th Cir. 2015). To support a claim for promissory estoppel, the alleged promise must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action. *Id.*; *see Stolts v. Wells Fargo Bank, NA*, 31 F.Supp.3d 876, 881 n.4 (S.D. Tex. 2014) (promise that loan modification was "under consideration" would not trigger promissory estoppel doctrine). The conclusory allegations in

8

Plaintiff's complaint are not sufficiently specific to support a plausible claim for promissory estoppel. She fails to plead any specifics as to what promise each of the two Defendants she raises this claim against made or any specifics about how and when each Defendant made the promise.

Further, Defendants have raised the statute of frauds in their motion for judgment on the pleadings. If, as here, the oral promise is barred by the statute of frauds, the plaintiff must show the promisor promised to sign a written document that would satisfy the statute of frauds. *Guajardo*, 605 F. App'x at 248–49 & n.6. Plaintiff failed to allege an additional promise that Defendants would put their promise in writing. Plaintiff has failed to raise a plausible promissory estoppel claim.

### Fraud—Negligent Misrepresentation

Plaintiff also asserts a claim for fraud/negligent misrepresentation against SPS and BOA. She alleges that they falsely represented to her that they would assist her to avoid foreclosure "by way of a loan modification." She alleges Defendants had no reasonable grounds for believing this representation to be true and failed to review her modification application. Plaintiff reasonably relied on the representation and waited months for the application to be processed. As a result, her credit history was damaged and additional amounts were added to her loan amount.

Defendants assert Plaintiff has failed to comply with the heightened pleading standard for fraud claims and also contend Plaintiff's fraud and

negligent misrepresentation claims are barred by the economic loss doctrine. In her response to the motion for judgment on the pleadings, Plaintiff acknowledges that she needs to plead additional facts to support these claims and requests leave to amend her complaint to do so. The Court grants Defendants' motion as to these claims.

### DTPA Violations

Plaintiff's last claim is against SPS and BOA for DTPA violations. She incorporates all preceding paragraphs of her complaint and alleges that SPS and BOA "engaged in false, misleading, or deceptive acts as described hereinabove."

Defendants assert Plaintiff has not pleaded a valid DTPA claim because she is not a "consumer" under the statute. A mortgagor qualifies as a consumer under the DTPA if her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint. *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013). As far as the Court can tell, Plaintiff's DTPA claim is based entirely on an attempted *modification* of her home loan. Such modification is similar to refinancing in that it is not sought for the acquisition of a good or service, but rather to finance an existing loan on previously acquired property. *Id.* Plaintiff's attempted loan modification was not a part of the financing scheme to acquire her house and is a "pure loan transaction." *See id.* Plaintiff has not

alleged facts showing she qualifies as a consumer under the DTPA and has not pleaded a plausible claim for DTPA violations.

For the foregoing reasons, the Court grants Defendants' motion for judgment on the pleadings. Although the Court is granting Defendants' motion, it will permit Plaintiff to replead. Rather than dismiss Plaintiff's claims with prejudice, the Court will allow Plaintiff to file an amended complaint within 30 days from the date of this order. *See Great Plains Trust Co.,* 313 F.3d at 329 (court should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

**SO ORDERED**.

Signed March 23, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE